J-S67020-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| KEVIN BURTON | : | |
| | : | |
| Appellant | : | No. 3801 EDA 2017 |

Appeal from the PCRA Order October 20, 2017
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0406851-2002

BEFORE: OTT, J., NICHOLS, J., and STRASSBURGER, J.[*]

MEMORANDUM BY NICHOLS, J.:                          **FILED MARCH 12, 2019**

Appellant Kevin Burton appeals from the order dismissing his *pro se*
fourth petition under the Post Conviction Relief Act (PCRA), 42 Pa.C.S. §§
9541-9546.  Appellant asserts that the PCRA court erred by (1) failing to find
that appointed PCRA counsel did not investigate new witnesses,[1] (2) applying
an incorrect standard of review to his newly discovered fact claim, (3) failing
to hold a hearing, and (4) accepting counsel's petition to withdraw under
***Turner/Finley***.[2]  We affirm.

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] Appellant's issues have been reordered for ease of disposition.

[2] ***Commonwealth v. Turner***, 544 A.2d 927 (Pa. 1988), and
***Commonwealth v. Finley***, 550 A.2d 213 (Pa. Super. 1988) (*en banc*).

The PCRA court summarized the relevant factual and procedural history of this matter as follows:

On October 23, 2003, following a jury trial, [A]ppellant and his co-defendant, Carnell Chamberlain, were convicted of first[-]degree murder, conspiracy, possession of an instrument of crime [(PIC)] and firearms violations, and sentenced to life imprisonment for the shooting death of Curtis Cannon (Cannon).[3] Appellant timely filed a direct appeal complaining that the [c]ourt erred in denying his motions to suppress, that the verdicts were against the weight and sufficiency of the evidence, that the [c]ourt erred by admitting a juror over his challenge for cause, that the [c]ourt erred by refusing to give a *Kloiber*[4] charge, and, that the [c]ourt erred by denying his motion for a mistrial. On May 5, 2005, the Superior Court of Pennsylvania, Appeal No. 3507 EDA 2003, affirmed the judgment of sentence[.] Appellant's Petition for Allowance of Appeal to the Supreme Court of Pennsylvania was denied on December 21, 2005. Appellant's judgment of sentence became final on March 21, 2006.

On June 14, 2006, [A]ppellant filed a *pro se* petition for PCRA relief claiming that trial counsel was ineffective for failing to move for severance; that trial counsel was ineffective for failing to undertake a full and adequate investigation of his case or otherwise prepare a proper defense strategy; that trial counsel was ineffective for failing to object to the prosecutor's continued elicitation of testimony from an alleged eyewitness regarding her fear of coming forward with information, where no proper foundation was laid; that trial counsel was ineffective for failing to object to the Commonwealth's alleged improper bolstering of its witness where the Commonwealth presented information that was not before the jury; that appellate counsel was ineffective for failing to raise issues of trial court error and trial counsel's ineffectiveness; that the [c]ourt failed to provide a legally sufficient jury instruction regarding how to evaluate the act of

_____

[3] 18 Pa.C.S. §§ 3701, 903, 907, 6105, 6106, and 6108. Appellant was sentenced to life in prison for murder, plus five to ten years of incarceration for conspiracy, 3½ to 7 years of incarceration for firearms violations, and 2½ to 5 years of incarceration for PIC.

[4] *Commonwealth v. Kloiber*, 106 A.2d 820 (Pa. 1954).

flight; and that he had newly discovered evidence that another person admitted to committing the murder. Attached to [A]ppellant's petition were sworn affidavits from alleged witnesses, Hasan McKinney (McKinney) and Edwin Smith (Smith).

An evidentiary hearing was held on July 6, 2007, where McKinney testified, in pertinent part, that he did not see the actual shooting. He was present with [A]ppellant, Malik and Little Man in the 3100 block of Custer Street.[5] Someone informed them that Cannon was up the block and they proceeded in that direction. On the way, McKinney stopped at the store and [A]ppellant and Little Man continued on. While inside the store, McKinney heard gunshots and exited the store. When he exited[,] the first person he saw was [A]ppellant. Appellant, Malik, Little Man and McKinney all ran. McKinney later asked [A]ppellant what happened. McKinney testified that, based on [A]ppellant's response, McKinney assumed that Little Man had shot Cannon because Cannon owed him money for drugs. In addition, McKinney testified that, while he was incarcerated, he was informed that [A]ppellant's trial was upcoming, but did not contact anyone with the information. Smith's proffered testimony was precluded as inadmissible hearsay. The [c]ourt determined that this was not after[-]discovered evidence, that the testimony of Mr. McKinney was cumulative and that he was known to [A]ppellant at or prior to the time of trial. On August 17, 2007, [A]ppellant's petition for PCRA relief was denied. The Superior Court affirmed on March 27, 2009[,] and [A]ppellant's Petition for Allowance of Appeal was denied on December 30, 2009.

On November 5, 2010, [A]ppellant filed a second PCRA petition claiming that he was entitled to relief based upon exculpatory evidence that had become available, and would have changed the outcome of the trial if it had been introduced. Attached to this petition were statements from two alleged eyewitnesses, Dawud Simmons (Simmons) and John Croon (Croon), both of whom said they observed someone other than [A]ppellant shoot Cannon. The [c]ourt thoroughly reviewed [A]ppellant's claims and determined that the petition was untimely and failed to properly invoke an exception to the timeliness requirement. On June 6, 2011, a Notice pursuant to Pa.R.Crim.P. 907[,] indicating that the petition would be dismissed after twenty days without further

_____

[5] The record does not reveal the full names of Malik and Little Man.

proceedings, was filed and served on [A]ppellant. In response to the Notice, on June 23, 2011, [A]ppellant submitted an "Amendment" to his second petition specifically invoking the newly discovered evidence exception to the timeliness requirement. Notwithstanding, on July 8, 2011, [A]ppellant's second petition for PCRA relief was formally dismissed.[] Dismissal was affirmed by the Superior Court on July 12, 2012[.]

On August 3, 2012, [A]ppellant filed a third petition for PCRA relief, again claiming newly discovered evidence. Attached to this petition were affidavits from an Antonio Jones, claiming he witnessed "Lil Man and another man," shoot Cannon, and from an Edward Glen who claimed that he witnessed, "Lil Man and 'Rell'" shoot Cannon. Following review, on July 17, 2015, [A]ppellant's PCRA petition was formally dismissed without a hearing. On May 3, 2016, the Superior Court affirmed the dismissal[.] The petition for allowance of appeal was denied on November 2, 2016.

On December 27, 2016, [A]ppellant filed the instant petition, his fourth, claiming governmental interference and newly discovered exculpatory evidence [that he allegedly received on September 6, 2016]. Attached to the petition were two exhibits: Exhibit A, was an unsigned, undated hand written letter purporting to be from a "Junious Diggs (Diggs)" indicating that he shot Cannon and that Lil Man never shot at all; an unsigned, undated typed letter purporting to be from an Eli Rosa, a cell mate to Diggs, who Rosa alleged bragged to him that he shot Cannon, indicating that Diggs gave him (Rosa) the letter which [Rosa] mailed to [A]ppellant's mother's address; and, a hand drawn map of the area where the shooting had occurred. Exhibit B was a copy of a letter dated April 4, 2016[,] from the [c]ourt to Diggs informing Diggs that his letter [he had sent to the court indicating he shot Curtis Cannon] was forwarded to the Chief of the District Attorney's Homicide Division.[6] . . . PCRA counsel was appointed and, on September 8, 2017, counsel filed a letter pursuant to [***Turner/Finley***], detailing the nature and extent of his review, listing the issues [A]ppellant wished to raise, explaining [that although on first blush it may appear as if Appellant had presented information he could not have come across sooner, his] issues are meritless[. PCRA counsel also indicated] that he had corresponded with [A]ppellant and reviewed the applicable law, and it was his

---

[6] The record does not reveal how Appellant obtained this letter.

professional opinion that there were no meritorious issues that could be raised in an amended petition, and that [A]ppellant was not entitled to relief because his petition was time barred. On September 18, 2017, following the [c]ourt's independent review, a [R]ule 907 notice of intent to dismiss was filed and served on [A]ppellant. Appellant filed a response to the notice averring that his petition did in fact overcome the PCRA time bar [and that PCRA counsel was ineffective in attempting to withdraw pursuant to **Turner**/**Finley**]. Attached to the response was an affidavit from a Michael Devan, an alleged alibi witness, who claimed he and [A]ppellant were together when they heard shots and later learned that Cannon was shot, and, when he learned that [A]ppellant had been locked up for the murder, he phoned [A]ppellant's trial counsel several times, but no one ever contacted him. The [c]ourt again reviewed the record, [A]ppellant's filings, PCRA counsel's [**Turner/Finley**] letter and the applicable law, and determined that [A]ppellant was not entitled to PCRA relief. On October 20, 2017, [A]ppellant's petition was formally dismissed and PCRA counsel was permitted to withdraw. This appeal followed.

PCRA Ct. Op., 1/16/18, at 1-6.

Appellant filed a timely notice of appeal that was docketed on November 13, 2017. At the same time, Appellant filed a concise statement of errors complained of on appeal under Pa.R.A.P. 1925(b). The PCRA court filed an opinion pursuant to Pa.R.A.P. 1925(a) on January 16, 2018.

Appellant raises the following questions for our review:

1. Did the PCRA court error/abuse discretion when failing to find that counsel failed to investigate new witnesses?

2. Did the PCRA court error/abuse discretion when it applied the [42 Pa.C.S. §] 9543 standard of review, and dismiss[ed Appellant's] petition without a hearing?

3. Did the PCRA court error/abuse discretion [for failing] to hold a hearing to determine[] whether Junious Diggs was credible?

4. Did the PCRA court error/abuse discretion [accepting] counsel's[] no merit letter, where Appellant [had a] viable claim of newly discovered facts (actual innocence), when

- 5 -

> Appellant provided an affidavit from Junious Diggs confessing to the murder of Curtis Cannon?
>
> 5. Did the PCRA court violate Appellant[']s constitutional right to equal protection, and due process, when failing to find that counsel didn't fully comply with requirements of *Finley*?[7]

Appellant's Brief at 7-8.

In his first issue, Appellant notes that Junious Diggs wrote a letter to the PCRA court, in which he confessed to murdering Cannon, and that the PCRA court forwarded the letter to the District Attorney's office. *Id.* at 18. Appellant argues that a *Brady*[8] violation arose because the PCRA court and the District Attorney's office did not forward Diggs' letter to him and that this failure forms the basis of a governmental interference exception to the PCRA's timeliness requirements. *Id.* Appellant also argues that his PCRA counsel failed to adequately investigate Junious Diggs, Eli Rosa, and Michael Devan to determine whether they offered newly discovered facts that would entitle Appellant to relief. *Id.* at 17-18.

Our review of the denial of PCRA relief is limited to "whether the record supports the PCRA court's determination and whether the PCRA court's decision is free of legal error." *Commonwealth v. Lawson*, 90 A.3d 1, 4 (Pa. Super. 2014) (citation omitted). "A second or subsequent request for PCRA relief will not be entertained unless the petitioner presents a

---

[7] We have reordered Appellant's questions presented for ease of disposition.

[8] *Brady v. Maryland*, 373 U.S. 83 (1963).

strong *prima facie* showing that a miscarriage of justice may have occurred."

***Commonwealth v. Abu-Jamal***, 941 A.2d 1263, 1267 (Pa. 2008) (citation omitted).

In considering an untimely PCRA, we note that "the timeliness of a PCRA petition is a jurisdictional requisite." ***Commonwealth v. Brown***, 111 A.3d 171, 175 (Pa. Super. 2015). A PCRA petition, "including a second or subsequent petition, shall be filed within one year of the date the judgment becomes final" unless the petitioner pleads and proves one of three statutory exceptions. 42 Pa.C.S. § 9545(b)(1). The three statutory exceptions include the following:

> (i) the failure to raise the claim previously was the result of interference by government officials with the presentation of the claim in violation of the Constitution or laws of this Commonwealth or the Constitution or laws of the United States;
>
> (ii) the facts upon which the claim is predicated were unknown to the petitioner and could not have been ascertained by the exercise of due diligence; or
>
> (iii) the right asserted is a constitutional right that was recognized by the Supreme Court of the United States or the Supreme Court of Pennsylvania after the time period provided in this section and has been held by that court to apply retroactively.

42 Pa.C.S. § 9545(b)(1)(i)-(iii). To invoke one of these exceptions, a petitioner must also file his petition within sixty days of the date the claim could have been presented. ***See*** 42 Pa.C.S. § 9545(b)(2) (subsequently amended October 24, 2018, to a one-year time-frame for claims arising on or after December 24, 2017).

Because Appellant failed to file the instant PCRA petition within one year after his conviction became final,[9] he must satisfy one of the exceptions to the PCRA time bar. Appellant claims that he meets the governmental interference exception because the PCRA court and the District Attorney's office committed a **Brady** violation.

"Although a **Brady**[10] violation may fall within the governmental interference exception, the petitioner must plead and prove the failure to previously raise the claim was the result of interference by government officials, and the information could not have been obtained earlier with the exercise of due diligence." **Abu-Jamal**, 941 A.2d at 1268; **accord**

_____

[9] There is no dispute that Appellant's conviction became final in 2006 and that Appellant's current PCRA petition, filed on December 27, 2016, was facially untimely.

[10] In **Brady**, the United States Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." **Brady**, 373 U.S. at 87. A defendant must demonstrate the following to establish a **Brady** violation: "(1) the evidence was suppressed by the Commonwealth, either willfully or inadvertently; (2) the evidence was favorable to the defendant; and (3) the evidence was material, in that its omission resulted in prejudice to the defendant." **Commonwealth v. Haskins**, 60 A.3d 538, 547 (Pa. Super. 2012) (citation omitted). In proving a **Brady** violation, "[t]he burden rests with the defendant to prove, by reference to the record, that evidence was withheld or suppressed by the prosecution. The withheld evidence must have been in the exclusive control of the prosecution at the time of trial. **Id.** (internal quotation marks and citation omitted). However, "[n]o **Brady** violation occurs when the defendant knew, or with reasonable diligence, could have discovered the evidence in question. Similarly, no violation occurs when the evidence was available to the defense from a non-governmental source. **Id.** (citation omitted).

*Commonwealth v. Smith*, 194 A.3d 126, 133 (Pa. Super. 2018). In determining whether a petitioner has acted with due diligence, we have explained that "[d]ue diligence 'does not require perfect vigilance and punctilious care, but merely a showing the party has put forth reasonable effort' to obtain the information upon which a claim is based." *Commonwealth v. Cox*, 146 A.3d 221, 230 (Pa. 2016) (citation omitted).

In *Commonwealth v. Chester*, 895 A.2d 520 (Pa. 2006), the appellant discovered that his trial counsel had been arrested for driving under the influence (DUI) shortly after entering his appearance on behalf of the appellant. *Chester*, 895 A.2d at 521. "Shortly after making this discovery, [the a]ppellant filed his second PCRA petition, claiming, *inter alia*, that [his] trial counsel's arrest created a conflict of interest and that by failing to inform him of [his] trial counsel's arrest and conflict of interest, the prosecution violated **Brady**." *Id.* The appellant attempted to invoke the governmental interference exception to the PCRA time-bar, but our Supreme Court held that Appellant failed to do so:

> We cannot perceive how [the a]ppellant's failure to raise his claims previously was the result of interference by government officials with the presentation of the claims. [The a]ppellant does not contend, for instance, that the Commonwealth had exclusive control over information regarding trial counsel's arrest and that the Commonwealth denied him access to this information until recently. . . . [T]rial counsel's arrest was a matter of public record and was just as available to [the a]ppellant and his previous counsel as it was to [the a]ppellant and his current counsel. . . . For these reasons, we hold that the PCRA court properly determined that [the a]ppellant's argument under the 'governmental interference' exception fails.

*Id.* at 524 (emphases omitted).

In ***Abu-Jamal***, the appellant filed an untimely PCRA petition alleging he had evidence from two individuals that two Commonwealth witnesses had perjured themselves at trial. ***Abu-Jamal***, 941 A.2d at 1265. Both witnesses alleged that the police coerced them into testifying against the appellant. *Id.* at 1265-66. The appellant attempted to invoke the governmental interference exception in Section 9545(b)(1)(i) on the theory that the Commonwealth committed a ***Brady*** violation by failing to disclose "that it was providing false evidence that implicated [the appellant] in the homicide." *Id.* at 1266. Our Supreme Court held that the appellant could not invoke the governmental interference exception because the appellant had

> offer[ed] no explanation regarding why [individuals with knowledge of the perjury] did not come forward sooner, ha[d] already had the opportunity to attack [one witness'] credibility at trial, and fail[ed] to explain why the information concerning [the other witness] could not have been obtained earlier with the exercise of due diligence.

*Id.* at 1270.

Here, we note that the PCRA court did not receive Diggs' letter until April 1, 2016. Appellant alleges that he did not receive a letter from Diggs until September 6, 2016, while his appeal from the dismissal of his prior PCRA petition was pending. Appellant was unable to file the instant PCRA petition until our Supreme Court disposed of his previous PCRA petition by denying his petition for allowance of appeal on November 2, 2016. By filing his current PCRA petition on December 27, 2016, Appellant filed it within sixty days of the date it could have been filed. ***See*** 42 Pa.C.S. § 9545(b)(2);

*Commonwealth v. Lark*, 746 A.2d 585, 588 (Pa. 2000) (holding that when a PCRA appeal is pending, "a subsequent PCRA petition cannot be filed until resolution of review of the pending PCRA petition by the highest state court in which review is sought, or upon the expiration of the time for seeking such review"); *accord Abu-Jamal*, 941 A.2d at 1266-67.

Although Appellant filed the instant PCRA petition within sixty days of the date the appeal of his previous PCRA petition was completed, Appellant failed to establish a time-bar exception based on a *Brady* claim that the information regarding Diggs' involvement in the murder was withheld from him. Appellant received Diggs' letter after Rosa sent it to Appellant's mother, which demonstrates that the letter was available from a non-governmental source. Since Appellant received the letter from Rosa via his mother, the Commonwealth did not have exclusive control over the information. *See Chester*, 895 A.2d at 524. Thus, there was no *Brady* violation to form the basis of a successful governmental interference exception claim. *See id.* Even assuming a *Brady* violation occurred, Appellant nevertheless received the information and filed the instant petition within sixty days of his previous petition's completion.

Moreover, Appellant's allegation that governmental interference prevented him from raising the claim previously regarding Diggs' involvement warrants no relief, since in his current PCRA petition, Appellant merely makes vague statements regarding the due diligence he allegedly exercised. Appellant states, for instance, that he had a private investigator "available" to

him. Mem. of Law in Supp. of Pet. for Relief Pursuant to the PCRA, 12/27/16, at 10 (unpaginated). In his appellate brief, Appellant makes bald statements that he could not have discovered that Diggs took credit for Cannon's murder before he received the letter from Rosa. Appellant's Brief at 19-20. Appellant states that he exercised due diligence in determining who had shot Cannon by "ask[ing] everyone that he came into contact with, that was from that area, and also had family members put his story on Facebook and other social media outlets. Petitioner wrote numerous lawyers, Innocence Projects, the [D]istrict Attorney's Office, as well as [g]overnment [o]fficials." **Id.** at 15; **see also** Appellant's Resp. to Rule 907 Notice, 10/2/17, at 3 (unpaginated).

Regarding Diggs, Appellant does not specify the actions he undertook to determine his involvement in Cannon's murder. Regarding Devan, the alleged alibi witness, Appellant states in his appellate brief that he asked family and friends about Devan's whereabouts. Appellant's Brief at 21. However, Appellant does not explain with any further specificity what he did to find Devan. Additionally, Appellant asserts that Devan was in contact with his previous attorney's office around the time of trial, **id.**, but Appellant does not explain why he did not bring the claim regarding Devan for more than ten years after his trial. Ultimately, Appellant has not demonstrated that he exercised due diligence in pursuing the governmental interference exception

to the PCRA's timeliness requirements. *See Abu-Jamal*, 941 A.2d at 1270. Accordingly, we find Appellant's first issue to be without merit.[11]

Next, Appellant asserts that the PCRA court erred by using an incorrect standard to determine whether his petition meets the requirements of the newly discovered fact exception to the PCRA's timeliness requirements, which resulted in the PCRA court dismissing his petition without a hearing. Appellant's Brief at 10, 25. Appellant asserts that he meets the newly discovered fact exception to the PCRA's timeliness requirements because "Mr.

---

[11] To the extent Appellant argues that PCRA counsel should have investigated Diggs, Rosa, and Devan more thoroughly, he asserts the following: "PCRA counsel [used] these witnesses['] incarceration as a crutch. PCRA counsel [said in his petition to withdraw as counsel] that these witnesses shouldn't be heard, because they are or once [were] in prison." Appellant's Brief at 22; *see Turner*/*Finley* Letter, 9/8/17, at 11-12.

Indeed, PCRA counsel indicated that in addition to failing to meet one of the timeliness exceptions, Appellant's presentation of Diggs' information would not be likely to change the outcome of the trial. *See Turner*/*Finley* Letter, 9/8/17, at 11. In support of this position, counsel noted that Diggs would likely have been perceived as telling a story to help a friend "beat the rap" since he was "an inmate who was a cell mate of a cell mate of petitioner and who is serving a life sentence." *Id.* at 11-12 (citing *Commonwealth v. Bracero*, 528 A.2d 936, 941 (Pa. 1987)). We discern no error in PCRA counsel's analysis. Moreover, Appellant does not explain how further investigation of these potential witnesses would have assisted him in meeting the requirements of the governmental interference timeliness exception.

We also note that this issue is phrased as an ineffective assistance of counsel (IAC) claim. Appellant raised counsel's ineffectiveness in his response to the PCRA court's Rule 907 notice of intent to dismiss, in which he alleged that "[PCRA c]ounsel never investigated any of the witness, nor any of petitioner[']s [n]otes [o]f [t]estimony or [d]iscovery." Appellant's Resp. to Rule 907 Notice, 10/2/17, at 5 (unpaginated). However, Appellant has not argued an IAC claim regarding this issue in his appellate brief, and accordingly, this issue is waived. *See* Pa.R.A.P. 2119(a).

Rosa uncovered the truth.  The facts, [which] Mr. Diggs confessed to Mr. Rosa[ were] all unknown until Mr. Rosa came forward[.]"  *Id.* at 16.   Appellant specifically argues that the PCRA court erred by evaluating the timeliness of his petition based upon the requirements of 42 Pa.C.S. § 9543 (describing the substantive requirements for eligibility for relief under the PCRA) rather than the timeliness exception in 42 Pa.C.S. § 9545(b)(ii) (indicating the requirements for establishing the newly discovered fact exception to the PCRA's time-bar).  *See id.* at 10, 25.

> The newly discovered fact timeliness exception in Section 9545(b)(1)(ii)
>
> requires a petitioner to demonstrate he did not know the facts upon which he based his petition and could not have learned those facts earlier by the exercise of due diligence.  Due diligence demands that the petitioner take reasonable steps to protect his own interests.  A petitioner must explain why he could not have learned the new fact(s) earlier with the exercise of due diligence.  This rule is strictly enforced.  Additionally, the focus of this exception is on the newly discovered facts, not on a newly discovered or newly willing source for previously known facts.

*Commonwealth v. Brown*, 111 A.3d 171, 176 (Pa. Super. 2015) (internal quotation marks and citations omitted).  The timeliness exception in Section 9545(b)(1)(ii)

> has often mistakenly been referred to as the "after-discovered evidence" exception.  This shorthand reference was a misnomer, since the plain language of subsection (b)(1)(ii) does not require the petition to allege and prove a claim of "after-discovered evidence."  Rather, as an initial jurisdictional threshold, Section 9545(b)(1)(ii) requires a petitioner to allege and prove that there were facts unknown to him and that he exercised due diligence in discovering those facts.  Once jurisdiction is established, a PCRA petitioner can present a substantive after-discovered-evidence claim.  *See* 42 Pa.C.S.A. § 9543(a)(2)(vi) (explaining that to be

eligible for relief under PCRA, petitioner must plead and prove by preponderance of evidence that conviction or sentence resulted from, *inter alia*, unavailability at time of trial of exculpatory evidence that has subsequently become available and would have changed outcome of trial if it had been introduced). In other words, the "new facts" exception at:

> [S]ubsection (b)(1)(ii) has two components, which must be alleged and proved. Namely, the petitioner must establish that: 1) the **facts** upon which the claim was predicated were **unknown** and 2) could not have been ascertained by the exercise of **due diligence**. If the petitioner alleges and proves these two components, then the PCRA court has jurisdiction over the claim under this subsection.

Thus, the "new facts" exception at Section 9545(b)(1)(ii) does not require any merits analysis of an underlying after-discovered-evidence claim.

*Id.* at 176-77 (some internal quotation marks, some citations, and footnote omitted).

Here, the PCRA court analyzed Appellant's claim under both Sections 9545 and 9543. First, the PCRA court determined that it lacked jurisdiction under Section 9545(b)(1)(ii) since Appellant failed to demonstrate that the information he presents is newly discovered or that he exercised due diligence in bringing his newly discovered evidence claim. **See** PCRA Ct. Op., 1/16/18, at 8-9. Second, the PCRA court noted that even if it had jurisdiction to consider this claim, Appellant was not entitled to relief on substantive grounds. *Id.* at 9. In so doing, the PCRA court cited to Section 9543. *Id.* In his appellate brief, Appellant cites only to the PCRA court's analysis regarding Section 9543 to argue that the PCRA court applied the wrong standard. **See** Appellant's Brief at 10. Since the PCRA court disposed of this issue on

- 15 -

jurisdictional grounds as set forth in Section 9545,[12] *see Brown*, 111 A.3d at 176-77, Appellant's argument is without merit.

Moreover, Appellant provides only vague statements regarding his exercise of due diligence, as noted above. Without more specificity, we are unable to disturb the PCRA court's ruling that Appellant has not put forth "reasonable effort" to determine the information he relies upon sooner. *See Cox*, 146 A.3d at 230; *Abu-Jamal*, 941 A.2d at 1270.

Appellant next asserts that the PCRA court erred by not holding a hearing to determine Diggs' credibility. Appellant's Brief at 14. Appellant contends that the court should have held a hearing because he met the requirements of the newly discovered fact exception to the PCRA time-bar. Specifically, Appellant argues that he exercised due diligence in determining who had shot Cannon. *Id.* at 15. Appellant further asserts that "[t]he PCRA [court] should have [given] Mr. Diggs an opportunity to proclaim his wrongdoings, so that the proper assessment could be made on his character, demeanor, and credibility . . . [n]o matter how long it took. *Id.* at 16 (citing *Commonwealth v. Medina*, 92 A.3d 1210 (Pa. Super. 2014)).

Appellant asserts that he is entitled to an evidentiary hearing regarding the merits of his claim. We note that in instances where a PCRA "petition is

---

[12] We note that the PCRA court should not have addressed Section 9543, since it found Appellant's petition to be untimely and therefore lacked jurisdiction to consider the merits of the petition. *See Brown*, 111 A.3d at 178 ("Absent proper jurisdiction, the PCRA court lacked authority to address the substantive merits of Appellant's after-discovered-evidence claim.[]").

determined to be untimely, and no exception has been pled and proven, the petition must be dismissed without a hearing [on the merits] because Pennsylvania courts are without jurisdiction to consider the merits of the petition." **Commonwealth v. Lambert**, 57 A.3d 645, 648 (Pa. Super. 2012) (citation omitted).

As we have already noted, Appellant has failed to demonstrate that he exercised due diligence. Accordingly, Appellant failed to plead and prove a timeliness exception to the PCRA time-bar, and the PCRA court could not hold a hearing to consider the merits of the petition because it did not have jurisdiction to do so. **See id.** Accordingly, we discern no error in the PCRA court dismissing Appellant's instant PCRA petition without holding a hearing to determine Diggs' credibility.

Appellant's final two issues challenge the PCRA court's acceptance of counsel's request to withdraw under **Turner**/**Finley**. Appellant asserts that "PCRA counsel acknowledged in his **Turner**/**Finley** [l]etter that [Appellant's] petition was timely filed[.]" Appellant's Brief at 11. Appellant contends that PCRA counsel used the requirements of Section 9543 rather than Section 9545 to assess his PCRA petition. **Id.** at 12. On this basis, Appellant asserts that PCRA counsel failed to properly list all issues with arguable merit and adequately explain why they are without merit. **Id.** at 13.

We note that Appellant has preserved his claim that PCRA counsel's **Turner**/**Finley** letter was inadequate in his response to the PCRA court's Rule 907 notice. To withdraw from representation at the PCRA court level,

counsel must review the case zealously. ***Turner/Finley*** counsel must then submit a "no-merit" letter to the trial court . . . detailing the nature and extent of counsel's diligent review of the case, listing the issues which the petitioner wants to have reviewed, explaining why and how those issues lack merit, and requesting permission to withdraw.

Counsel must also send to the petitioner: (1) a copy of the "no-merit" letter/brief; (2) a copy of counsel's petition to withdraw; and (3) a statement advising petitioner of the right to proceed *pro se* or by new counsel.

***Commonwealth v. Wrecks***, 931 A.2d 717, 721 (Pa. Super. 2007) (citations omitted).

Instantly, PCRA counsel substantially complied with the requirements of withdrawing under ***Turner***/***Finley***. PCRA counsel filed a motion to withdraw as counsel and sent Appellant (1) a copy of his "no-merit" letter detailing PCRA counsel's review of the matter and reasoning for determining the issues Appellant wishes to raise lack merit, (2) a copy of the motion to withdraw, and (3) a statement advising Appellant of his right to proceed *pro se* or with private counsel. ***See*** Mot. to Withdraw as Counsel, 9/8/17; ***see Wrecks***, 931 A.2d at 721.

Regarding Appellant's argument that PCRA counsel acknowledged that Appellant filed a timely PCRA petition, we note that PCRA counsel referred to the fact that Appellant had filed the instant petition within sixty days of the Pennsylvania Supreme Court's order denying his petition for allowance of appeal in his previous PCRA petition. ***See Turner***/***Finley*** Letter, 9/8/17, at 8. Accordingly, PCRA counsel noted that Appellant had met the requirement to file his instant PCRA petition within sixty days of when the claim could have

- 18 -

been filed. *See* 42 Pa.C.S. § 9545(b)(2); *Lark*, 746 A.2d at 588. However, PCRA counsel did not, and in fact, could not, opine that Appellant met the requirements of the newly discovered fact exception to the PCRA time-bar since there was no viable basis to do so, as discussed herein. *See Turner/Finley* Letter, 9/8/17, at 8. Accordingly, this portion of Appellant's argument is without merit.

As to Appellant's argument that PCRA counsel used the incorrect standard under Section 9543 to evaluate his newly discovered evidence claim, we note that PCRA counsel referenced the standard in Section 9543 and noted that it may appear that "[u]ntil Diggs admitted that he participated in the incident, there arguably was no way for petitioner to discover that information." *Id.* However, counsel also analyzed Appellant's claims under Section 9545. PCRA counsel concluded that Appellant could not meet the newly discovered fact exception under Section 9545(b)(1)(ii) because Appellant previously admitted to being at the murder scene. *See id.* at 9. Therefore, Appellant would have been able to present any facts that arose at the scene to the PCRA court in a timely fashion. *See id.* Because PCRA counsel analyzed Appellant's claim based on the correct standard in Section 9545 in addition to comments related to the standard in Section 9543, any incorrect analysis based upon Section 9543 did not prevent the PCRA court from properly permitting counsel to withdraw under *Turner/Finley*.

Order affirmed.

Judge Ott joins the memorandum.

Judge Strassburger concurs in the result.
Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/12/19